UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FELIPE A. PLACENCIA,

               Petitioner,

    -against-                      **MEMORANDUM AND ORDER**

UNITED STATES OF AMERICA,        05-CV-3251 (SLT)

               Respondent.
----------------------------------------------------------x
TOWNES, J.:

      Petitioner, Felipe A. Placencia, who is currently detained on immigration charges at the Federal Detention Center at Oakdale, Louisiana, brings this *pro se* "Application for Nationality," requesting that this Court declare him a "national of the United States," as defined in 8 U.S.C. §1101(a)(22)(B). Petitioner's application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, this action must be dismissed.

Background

      This is the second action filed by petitioner in this Court in an effort to prevent his deportation from the United States. His prior petition – Placencia v. United States, No. 05-CV-2007 (SLT) – which was filed in April 2005 (hereinafter, the "Prior Petition"), alleged that petitioner is a native of the Dominican Republic, who moved to the United States as a child and has lived as a lawful resident alien in the United States since 1988. Prior Petition at 1. On November 23, 2000, petitioner was convicted, upon his plea of guilty, of "assault with a knife in the second degree" and was sentenced to one year in prison. Id. at 1-2. In November 2004, over three years after his release from prison, petitioner sought to renew his green card at the Manhattan Office of United States Immigration and Customs Enforcement ("ICE"). There, he was interviewed by ICE officials who informed him that the crime of which he had been

convicted constituted an "aggravated felony" and that his conviction was therefore a ground for deportation. See 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for the removal of an alien who has been convicted of an aggravated felony). Petitioner was arrested and "has been detained without bond ever since." Prior Petition at 2.

In his Prior Petition – entitled an "Application for a Writ of Error Coram" – petitioner sought an order either vacating his conviction or "remodify[ing] his sentence from one year to 364 days in order to eliminate the basis of his removal proceedings." Id. at 1. In a Memorandum and Order dated July 5, 2005 (hereinafter, the "Prior Order"), this Court held that a federal court cannot grant a writ of error coram nobis to set aside or modify a judgment rendered by a state court. Placencia v. United States, No. 05-CV-2007 (SLT), slip op. at 6-8 (E.D.N.Y. July 5, 2005). However, because it was unclear whether the conviction petitioner sought to challenge was a State conviction, and since the Second Circuit had not yet ruled on the issue of whether coram nobis can be used in federal court to attack a state court judgment, this Court directed petitioner to file an affirmation identifying the court in which he was convicted and, if that court was a state court, showing cause why the petition should not be dismissed for lack of subject matter jurisdiction. Id. at 10. Petitioner has yet to file that affirmation.

Before receiving the Prior Order, petitioner commenced this action by filing a document entitled an "Application for Nationality" (hereinafter, "Application"). In this Application, petitioner alleges that he applied for naturalization in February 2000, and passed his citizenship test on January 7, 2003. Id. at 1. However, petitioner's application was denied on November 28, 2003, because of his 2000 conviction. Id. Petitioner does not state whether he took any action to administratively challenge the denial of his naturalization application prior to his November 2004 arrest by ICE.

2

Petitioner also does not state the current status of his immigration proceedings. However, in his Application, he refers to his appearance before an Immigration Judge ("IJ"):

> [I] ... told the immigration judge that I am a "national" of this country and that I am not deportable because I ... filled (sic) an Application to become a citizen of the United States of America[] and that I ... registed (sic) for selective service[] and I paid taxe[s] since I came to the united states of america, since 1988 to 2004.

Application at 3 (emphasis omitted). Petitioner does not indicate whether the IJ has ruled on this argument, whether he raised the same argument before the Board of Immigration Appeals ("BIA"), or whether the BIA has ruled on his appeal.

Petitioner's Application essentially expands on the argument petitioner made before the IJ. Petitioner cites to 8 U.S.C. §1101(a)(22), which defines the term "national of the United States," but incorrectly asserts that this provision says:

> the most important step to become a "national" are that you (A) filled (sic) an application to become a citizen of the united states of america (B) ... registed (sic) for selective service[] (C) ... work and paid taxe[s] in the united states of america[] (D) ... live in the united states of america as a lawfull (sic) permanent resident for .... more that (sic) 10 years.

Application at 4 (emphasis omitted). Petitioner subsequently alludes to the actual definition set forth in 8 U.S.C. §1101(a)(22)(B), by describing a "'national' as one person who 'owes' permanent allegiace (sic) to the united states." Id. (emphasis omitted). Petitioner implies that he fits this definition by noting that he signed an "oath of alligiance (sic)" when he passed his citizenship test.

Although petitioner does not cite to Lee v. Ashcroft, 216 F.Supp.2d 51 (E.D.N.Y. 2002), or to any other cases, petitioner also lists other facts which were relevant to the Lee Court's determination that Lee met §1101(a)(22)(B)'s definition of a "national of the United States."

3

Aside from repeating the facts that he told the IJ – i.e., that he filed an application for citizenship, registered for selective service and paid taxes between 1988 and 2004 – and that he signed the oath of allegiance, petitioner alleges that he is married to a United States citizen, has a citizen son, and has been living in the United States for more than 10 years. Application at 5. Petitioner also attaches various documents to substantiate all of these allegations, including petitioner's executed oath of allegiance and other portions of his application for naturalization; his marriage certificate; his son's birth certificate; a form acknowledging his registration with the Selective Service System; and a form indicating that petitioner has paid Social Security taxes.

Based on these arguments and this evidence, petitioner urges this Court to "help" him and to protect him from deportation. Application at 5. Petitioner does not, however, suggest any legal basis for granting the relief he seeks. Apart from 8 U.S.C. §1101(a)(22), petitioner only cites to some unidentified statute which allegedly gives "every person ... the right to change his or her 'nationality.'" Id. at 4 (emphasis omitted). There is nothing to suggest, however, that this is a federal statute or that there is any federal authority for the proposition that persons have the right to unilaterally determine their nationality.

Discussion

Title 28, section 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous as a matter of law when, inter alia, it is based on an "indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law..., or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).

4

If a plaintiff is proceeding pro se, the complaint must be read liberally and interpreted as raising the strongest arguments it suggests. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

In this action, petitioner – who faces removal from the United States as an alien who has been convicted of an aggravated felony, see 8 U.S.C. §1227(a)(2)(A)(iii) – seeks to avoid removal by having this Court declare him a "national of the United States." Title 8, section 1101(a)(22), of the United States Code defines the term "national of the United States" to mean "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." Petitioner concedes that he was denied citizenship in November 2003. However, he suggests that, since he swore an oath of allegiance to the United States in the course of applying for naturalization, and can otherwise demonstrate that he "owes permanent allegiance," he qualifies as a "national of the United States" under the terms of §1101(a)(22)(B). He further suggests that this argument finds support in an unspecified statute, which allegedly gives every person the right to change his or her nationality.

Although petitioner presents sympathetic circumstances, this Court lacks jurisdiction to grant the relief petitioner seeks. Petitioner is requesting "naturalization" – that is, "the conferring of nationality of a state upon a person after birth, by any means whatsoever." 8 U.S.C. §1101(a)(23). However, "[s]ection 1101(a)(23) makes no provision for the attainment of nationality short of full naturalization." Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 969 (9th Cir. 2003), cert. denied, 540 U.S. 1104 (2004). Moreover, Congress has conferred "[t]he sole

5

authority to naturalize persons as citizens of the United States ... upon the Attorney General," 8 U.S.C. §1421(a), and no court has jurisdiction to naturalize a person "unless a petition for naturalization with respect to that person was filed with the naturalization court before October 1, 1991." 8 C.F.R. §310.4. Since the instant petition was not filed until 2005, this Court lacks jurisdiction to naturalize petitioner.[1]

Even if this Court had jurisdiction to naturalize petitioner, it would decline to do so. Petitioner has not cited, and this Court's independent research has not found, any persuasive authority for the proposition that a citizen of another country can ever be a noncitizen national of the United States. "[N]on-citizen nationality has traditionally been limited to people who were born in territories of the United States." Perdomo-Padilla, 333 F.3d at 968. As the Second Circuit has explained:

> The term nationals came into use in this country when the United States acquired territories outside its continental limits whose inhabitants were not at first given full political equality with citizens. Yet they were deemed to owe permanent allegiance to the United States and were entitled to our country's protection. The term national was used to include these noncitizens in the larger group of persons who belonged to the national community and were not regarded as aliens.

Oliver v. INS, 517 F.2d 426, 428 n. 3 (2d Cir.1975) (per curiam). Thus, "the only remaining noncitizen nationals are residents of American Samoa and Swains Island." Miller v. Albright, 523 U.S. 420, 467 n. 2 (1998) (Ginsburg, J., dissenting); see Igartua De La Rosa v. United States, 229 F.3d 80, 86 n. 12 (1st Cir. 2000) (Torruella, J., concurring). Petitioner, who was born in the Dominican Republic, cannot be a noncitizen national.

---

[1] Had petitioner's application for naturalization not been denied, this Court might have had jurisdiction to determine his application for naturalization under 8 U.S.C. §1447(b). However, since petitioner alleges that his application was denied, §1447(b) is inapplicable to this case.

6

In reaching this conclusion, this Court is well aware of Lee v. Ashcroft, 216 F.Supp.2d 51 (E.D.N.Y. 2002), which held that a Hong-Kong-born United States resident, who had entered the United States as a child, lived in this country for nearly thirty years, married a United States citizen, had two citizen children, and demonstrated his allegiance through his application for naturalization and his registration for selective service, was a noncitizen national of the United States. However, this Court is also aware that Lee, although never overruled, has been "distinguished and disapproved of" by no less than three Circuit Courts of Appeals. Acero v. INS, No. Civ. 04-0223 (DGT), 2005 WL 615744, at *4 (E.D.N.Y. Mar 16, 2005) (citing cases). In Perdomo-Padilla, 333 F.3d 964, the Ninth Circuit criticized Lee for focusing "primarily on the common-sense meaning of 'allegiance to the United States,' without analyzing other clues as to the meaning of 'national of the United States.'" Id. at 972. The Ninth Circuit conducted an exhaustive analysis of these clues, and held that a person can become a "national of the United States" only through birth or naturalization. Id. Similarly, in Salim v. Ashcroft, 350 F.3d 307 (3d Cir. 2003), the Third Circuit stated that Lee "relied on the petitioner's subjective allegiance to the United States, and did not engage in a complete analysis of what it means to be a 'national' of the United States." Id. at 310. After performing this analysis, the Third Circuit held that "for one ... who is a citizen of another country, nothing less than citizenship will show 'permanent allegiance to the United States.'" Id. In addition, the Fifth Circuit has characterized Lee as providing a "permissive interpretation of the requirements of national status," although the Court declined to reach the question of whether a permanent resident alien could become a "national of the United States" through a sufficient demonstration of allegiance. Alwan v. Ashcroft, 388 F.3d 507, 513 (5th Cir. 2004).

7

This Court is persuaded by the reasoning of Perdomo-Padilla and Salim. However, this Court notes that the Second Circuit has not yet addressed this issue and that the Fourth Circuit has held, in the context of a criminal action and without thorough analysis, that a permanent resident who completed an application for naturalization qualified as a "national of the United States" under 8 U.S.C. §1101(a)(22)(B). United States v. Morin, 80 F.3d 124, 126 (4th Cir. 1996). Petitioner, who alleges he "told the immigration judge that [he is] a 'national' of this country" because he applied for citizenship, registered for selective service, and paid his taxes, Application at 3 (emphasis omitted), has apparently raised this issue before the IJ. Although petitioner does not allege whether the IJ rejected this argument or the status of his immigration proceedings, he may still be able to raise this claim on appeal to the BIA. If both the IJ and the BIA reject this claim, petitioner may be able to obtain review of this issue before the United States Court of Appeals for the Second Circuit. See 8 U.S.C. §1252.

Conclusion

For the reasons set forth above, petitioner's Application for Nationality is dismissed pursuant to 28 U.S.C. §1915(e)(2)(B), since it fails to state a claim upon which relief may be granted. The court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
August 2, 2005